UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES D. COHEN, | : | CIVIL ACTION NO.: |
| Plaintiff, | : | |
| v. | : | |
| UNICOMM LLC, | : | JURY TRIAL DEMANDED |
| Defendant. | : | MAY 12, 2016 |

## COMPLAINT

### NATURE OF THE ACTION

1. This is an action to recover damages and equitable relief for breach of a July 2008 settlement agreement resolving an earlier lawsuit in this judicial district entitled *James D. Cohen v. Unicomm LLC and John V. Golicz, individually*, docket number 3:05-CV-01890. It also seeks damages and equitable relief for breach of the implied covenant of good faith and fair dealing inhering in the settlement agreement.

### JURISDICTION

2. This Court has ancillary jurisdiction pursuant to 28 U.S.C. § 1367 to enforce the terms of the settlement agreement read into the record at the conclusion of the trial of this matter on June 30, 2008, and referenced in the Judgment entered on August 8, 2008.

### PARTIES

3. James Cohen is a resident of Connecticut. He has been building, running and

growing successful events and businesses for over 20 years.  He founded IEvents Media where he launched the AdventureExpo, which continues to be the largest series of events focused on the global travel industry.  He won the Show Manager of the Year award (SMOTY) in 2006.

4.     Defendant Unicomm LLC is a corporation duly organized and existing under the laws of the State of Connecticut and is authorized to do business in the State of Connecticut.  According to its website, Unicomm is an independent business-to-business communications company specializing in originating and managing world class trade shows and conferences in under-served and nascent markets.  Unicomm's management team "has been responsible for some of the industries most successful trade shows and conferences including producing the largest series of travel events in the United States-Travel & Adventure Shows," it states.  Its Chief Executive Officer is John V. Golicz.

## STATEMENT OF FACTS

5.     In August 2001, plaintiff Cohen developed a unique concept for an adventure travel and tourism event, know at the time as the AdventureExpo.

6.     On or about December 19, 2002, defendant Unicomm offered Cohen employment. Under the terms of the agreement, Cohen would be employed to produce his travel and adventure event on behalf of Unicomm, in exchange for an equity interest in the event, and other compensation.

7.     During the remaining weeks of 2002 and the first week of 2003, negotiations

between the parties by email and telephone continued with various offers being made. Ultimately, an agreement was reached on all material terms during a telephone conversation between Cohen and Golicz. During these telephone conversations, Golicz expressed his eagerness to have Cohen join Unicomm and that the details could be worked out after he started working. Cohen, however, insisted on reaching an agreement on the material terms of his employment, compensation and equity participation before he would bring his travel and adventure event to Unicomm.

8.     On January 7, 2003, Unicomm and Cohen reached agreement on all material terms of his employment, compensation and equity participation. The parties agreed that Unicomm would prepare a written document incorporating the terms of the agreement within approximately four to six weeks from that day.

9.     The material terms agreed to by the parties included:

    a.     Equity interest in the proceeds from the sale of the event(s) for Cohen equaling 7.5% for the first $2 million in asset sales, 20% for the next $3 million in asset sales and 25% for each additional dollar over $5 million in asset sales.

    b.     Cohen's equity interest vested immediately.

    c.     Cohen's equity participation could not be diluted.

    d.     Cohen's base salary was $45,000 dollars.

    e.     Cohen was to receive 3% commission on all sales up to $300,000, 6% commission on all sales from $300,001 up to $700,000 and 8% commission on all sales above $700,000.

      f.      Cohen was to receive 2.5% of the gross profits of each event and 5% of gross profits of each event above budget.

      g.      Cohen had the right to force Unicomm to buy his equity interest after Cohen's third year of employment at 3 x gross profit of the event(s).

      h.      Cohen had the right of first refusal to buy the event(s) at the equivalent terms of any sale in which the purchase price falls at a multiple of less than 3x the gross profit.

      i.      Cohen was to receive his equity interest and commissions for any new event(s) and or business that Cohen's work created for Golicz and Unicomm and that Golicz and Unicomm agreed on doing.

      j.      The agreement was predicated on Cohen delivering a mutually agreeable promotional agreement with the New York Post, or other mass media vehicle as approved by Unicomm and Unicomm acquiring acceptable dates from the Jacob Javits Convention Center.

10.    Pursuant to these terms Cohen began employment on or about January 13, 2003 and began immediately fulfilling his obligations and responsibilities including, on behalf of Unicomm, contracting media groups as sponsors of the event, and transferring all of his research and databases into the Unicomm systems.

11.    On or about November 14, 2003, approximately eleven months after Cohen started, Golicz finally provided a document to Cohen that purported to reflect his employment agreement.

12. Although some of the terms of the January 2003 agreement were accurately reflected in the document, such as equity percentage contributions to Cohen for the New York Adventure Travel event, it also contained terms that were substantially different from the employment terms previously agreed upon.

13. Cohen advised Golicz and Unicomm that the terms of the November 2003 document were substantially different from the employment terms agreed upon in January 2003. In response, Golicz told Cohen that his attorney would revise the contract.

14. Thereafter Golicz and Unicomm provided several subsequent revised written drafts, which were rejected by Cohen because each draft failed to incorporate accurately the employment terms agreed upon by all parties on or about January 7, 2003.

15. On May 12, 2005, Cohen refused to sign the final revised document he was provided by Unicomm and Golicz because it did not accurately reflect the employment terms agreed upon on or about January 7,2003. The final draft document in fact contained the most unfavorable terms for Cohen of all the documents that were drafted and, shortly after he rejected it, he was terminated without cause.

16. On December 12, 2005, Cohen sued Unicomm and Golicz, individually in this court for breach of contract, among other causes of action.

17. The parties settled their case on the sixth day of a jury trial before Magistrate Judge Margolis on June 30, 2008, just before closing arguments.

18.     The terms of the parties' settlement agreement were read into the record that day, one of which required that "Unicomm shall list Plaintiff on the [Adventures in Travel Expo] website as a 'founder' of the Adventures in Travel Expo."

19.     While defendant Unicomm initially complied with this term of the agreement by listing his name on the same page as, and as prominently as, other executives at Unicomm, including CEO John Golicz, it has since breached the agreement by removing his name from the ATE website entirely, then moving it to a different page where it was barely visible, and finally, after Cohen complained, incorrectly listing him as "founder/content – james cohen" for the ATE, in all lower case letters, and, again, in barely visible typeface, at the very bottom of a page entitled "media download center."

20.     Defendant Unicomm has engaged in these practices in bad faith and with a sinister purpose, i.e., to conceal his 8.5% ownership interest in the ATE business from potential buyers (another term of the July 2008 settlement agreement), and to pay him less than he would be entitled to under the terms of the agreement by means of an informally negotiated buy out of his ownership interest.

21.     Defendant's CEO Golicz, in addition, falsely holds himself out as "the founder" of ATE on his Linkedin profile, and various other media outlets.

22.     Defendant has further breached the terms of the settlement agreement by refusing to allow him to review the financials of the company, after being repeatedly approached by Golicz with several offers to buy out his equity interest.  These offers involved a sale of part of the ATE, i.e., Cohen's interest, and the settlement agreement

expressly requires defendant to allow Cohen access to its financials in connection with any sale of ATE and related entities. It has failed to do so.

## COUNT ONE

## BREACH OF CONTRACT

23. Cohen incorporates by reference the allegations of paragraphs 1 through 22.

24. By its actions, Unicomm has breached its settlement agreement with Cohen.

25. Defendant's breach of the agreement has caused Cohen damages, including attorneys' fees, costs, harm to his reputation and ownership interest in the ATE and related events, the inability to accurately assess the value of his interest in ATE in connection with proposed sales of his equity interest, and economic damages.

## COUNT TWO

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

26. Cohen incorporates by reference the allegations of paragraphs 1 through 25.

27. By its actions, Unicomm has breached the implied covenant of good faith and fair dealing inhering in the June 2008 settlement agreement with Cohen.

28. Defendant's breach has caused Cohen damages, including attorneys' fees, costs, harm to his reputation and ownership interest in the ATE and related events and economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Cohen respectfully requests this Court to enter:

1. An award of compensatory damages;

2. A permanent injunction ordering defendant to post Cohen's name as a Founder of the ATE business in the same manner it initially posted it on the website, i.e., as prominently as the name of every other individual involved in the business, as well as an injunction requiring defendant to allow Cohen access to its financials;

3. Attorneys' fees and costs for intentional and bad faith breach of the July 2008 settlement agreement and implied covenant of good faith and fair dealing, which are contractually provided to Cohen pursuant to section 4 of the June 2008 settlement agreement;

4. Punitive damages;

5. Retention of jurisdiction over this action until defendant has fully complied with the orders and judgment of this Court; and

6. Such other and further relief, including equitable relief, as this Court deems just and proper.

Plaintiff demands a jury trial on all counts.

          THE PLAINTIFF
          JAMES D. COHEN

By: /s/ Jeffrey S. Bagnell
     Jeffrey S. Bagnell
     Federal Bar No. CT18983
     Lucas Bagnell Varga LLC
     2425 Post Road
     Southport, Connecticut 06890
     (203) 227-8400
     (203) 227-8402 (fax)
     jbagnell@lbv-law.com